# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANNETTE BEGAY,

      Plaintiff,

vs.                                                                Civil No. 02-0134 WJ/KBM

THE ARLYS'S COMPANY, INC, d/b/a
FURNITURE WAREHOUSE, et al.,

## MEMORANDUM OPINION AND ORDER GRANTING
## CREDIT DATA SOUTHWEST'S MOTION FOR SUMMARY JUDGMENT

      THIS MATTER comes before the Court upon a Motion for Summary Judgment filed by Merchant's Information Solutions, Inc., d/b/a Credit Data Southwest ("CDSW") on December 19, 2002 (**Doc. 83**).  Plaintiff alleges that CDSW, a credit reporting agency, failed to conduct a reasonable investigation into how her former employer, Furniture Warehouse, reported her accounts. Her claims against CDSW are based on negligent and (in the alternative) willful violations of the both the Federal Credit Reporting Act, 15 U.S.C. § 1681-1681t (2000), and the New Mexico Credit Bureaus Act, N.M.Stat.Ann. § 56-3-2 (1978).  Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken and will be granted.

### Background

      Plaintiff was an employee of Furniture Warehouse from September 1994 until April, 2000. During her employment, Plaintiff made credit purchases from Furniture Warehouse on three accounts.  Monthly payments for these purchases were deducted from her paychecks.  At the time she was terminated, Plaintiff owed $7,000.00.  Plaintiff made no payments on any of these

accounts after April 28, 2000, the date she was terminated. The accounts were "charged off" as bad debts for tax purposes in July, 2000, 90 days after they became past due.[1] In July 2000, Plaintiff filed a charge of race discrimination pursuant to the New Mexico Human Rights Act, N.M.Stat.Ann. 1978 § 28-1-1 et seq., with the New Mexico Human Rights Division, which conducted a mediation between Furniture Warehouse and Plaintiff. A settlement was reached on August 14, 2000,[2] in which (among other things) Plaintiff received a cash amount of $4,463.00, and Furniture Warehouse agreed to "zero out" the balances of all three of the Furniture Warehouse credit accounts, which amounted to $7,001.00 at that time. Plaintiff alleges that Furniture Warehouse reported the account balance as a "charge off" when it should have been reported as paid by virtue of the settlement agreement. Plaintiff disputed Furniture Warehouse's reporting of the accounts with CDSW. Plaintiff contends that in response to these disputes, CDSW recorded the accounts inaccurately, and also that CDSW failed to follow reasonable procedures to assure the accuracy of its reports.

## Discussion

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[1] Plaintiff worked in the general accounting area of Furniture Warehouse, and was familiar with the accounting procedure which allowed charge-offs of overdue accounts after ninety days. Pltff's Dep. at 170.
Although presented by Plaintiff as a disputed fact, whether the accounts were actually charged off in July 2000 by Furniture Warehouse or Commonwealth, Inc, a company which buys retail installment contracts, is immaterial for purposes of this motion.

[2] Defendant uses August 15, 2000 as the settlement date, but the date on the copy of the settlement agreement attached as Defendant's Ex. E shows a date of August 14, 2000.

Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We consider the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving parties. Hollander v. Sandoz Pharms. Corp., 289 F.3d 1193, 1214 (10th Cir.2002). "In this respect, we must view the evidence in context, not simply in its segmented parts." McCowan v. All Star Maint., Inc., 273 F.3d 917, 921 (10th Cir.2001).

To prevail in a private civil action under the Fair Credit Reporting Act, § 15 U.S.C. 1681s-2(a) ("FCRA"), a plaintiff must establish that (1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) the plaintiff suffered an injury; and (4) the consumer reporting agency's failure caused the plaintiff's injury. Cassara v. DAC Servs., Inc.., 276 F.3d 1210 (10th Cir. 2002). Thus, as a credit reporting agency, Defendant CDSW's exposure to liability is limited to the accuracy of its reporting and the reasonableness of its investigative procedures upon a consumer complaint.

Plaintiff contends that Furniture Warehouse reported her account as a "charge off" on August 15, 2000, one day after it signed the settlement agreement, when the report should have reflected that the accounts had been paid. It is not entirely clear whether Furniture Warehouse in fact reported the account as a "charge off" on that day. As evidence that it did, Plaintiff presents a copy of a response to an interrogatory. Pltff's Ex. B.[3] However, Plaintiff also submits a deposition by Rosalyn Newson, a Furniture Warehouse manager and one of the Defendants in this action, who stated that she did not believe that the company reported the charge off on that date.

---

[3] Exhibits will be referred to as belonging to Plaintiff or Defendant, since both parties used letters to identify their set of exhibits.

Pltff's Ex. C at 147:5-10. That issue need not be resolved for purposes of Plaintiff's allegations against CDSW.

On January 31, 2001, Plaintiff sent CDSW a dispute of the credit reports for the accounts. CDSW contacted Furniture Warehouse regarding the dispute, to which Furniture Warehouse responded by requesting that CDSW report the accounts as "paid/charge off." CDSW then reported the accounts as "paid/charge off." Plaintiff disputed twice more, in February and then in August 2001. Both times, CDSW forwarded the dispute forms (Pltffs' Exs. J, K, L) to Furniture Warehouse, which both times verified that the accounts were reported correctly as "paid/charge off." Plaintiff's credit reports of March and September of 2001 reflect that the accounts were reported as "paid/charge off." Pltff's Exs. N, O.

I need not look at the reasonableness of CDSW's procedures if Plaintiff has not first satisfied the threshold burden of showing that the credit reporting agency prepared a report containing "inaccurate" information. Cahlin v. Gen. Motors Accept. Corp., 936 F.2d 1151, 1156 (11th Cir. 1991); Whelan et al v. Trans Union Credit Reporting Agency, et al., 862 F.Supp. 824, 829 (E.D.N.Y. 1994). I find that Plaintiff has not made this initial showing here. It is undisputed that CDSW reported the accounts as "*paid* charge off" (emphasis added) following an investigation into Plaintiff's first dispute. CDSW modified its reporting of the Furniture Warehouse accounts to accurately reflect the status of the those accounts, as reported by Furniture Warehouse,[4] and CDSW continue to monitor its records for accuracy with each of

---

[4] My finding holds for either a "technical accuracy" standard or the broader one which strives for "maximum accuracy". Cahlin, 936 F.2d at 1156. Koropoulos et al v. The Credit Bureau, 734 F.2d 37, 40 (D.C. 1984).

4

Plaintiff's subsequent disputes. Cmp., Dynes v. TRW Credit Data et al., 652 F.2d 35 (9th Cir. 1981) (error for district court to conclude that credit reporting agency's single verification of first but inaccurate credit report fulfilled obligation under § 1681i(a) when agency refused to reinvestigate a disputed "new report" concerning the account).

Plaintiff contends that CDSW violated its duty under 41 U.S.C. § 1681i(a)(2)(B) because it did not provide Furniture Warehouse, as the provider of credit information, "all relevant information regarding the dispute,"  However, for several reasons, I find that whether or not CDSW actually received the faxed copies of 22 other documents Plaintiff allegedly sent to CDSW at the time of the first dispute does not affect the inquiry into whether CDSW's report was accurate.  First, most if not all of these documents, such as a copy of the settlement agreement and copies of Furniture Warehouse accounts ledgers, were documents with which Furniture Warehouse was already obviously familiar.  Plaintiff's real objection, it seems, is to the reporting of the account as a "charge off" – regardless of whether or not it is characterized as "paid."  This objection attacks the underlying credit information, rather than the reporting of the information, and is beyond CDSW's limits of liability as a credit reporting agency under the FCRA.  See Williams v. Colonial Bank, et al., 826 F.Supp. 415, 418 (M.D.Ala. 1993).[5]

Second, *how* CDSW conducted its investigation (i.e., whether CDSW passed along the 22 documents to Furniture Warehouse) concerns the reasonableness of CDSW's investigative procedures, which is not necessary where a plaintiff has not demonstrated that the report is

---

[5] Consumers who dispute *how* a particular credit item is characterized or interpreted on their credit report have a "unique remedy" found in § 1681i(c) of the FCRA, which allows consumers "to submit a statement setting forth their version of the dispute to be enclosed in their credit report." Williams, 826 F.Supp. at 418 (citing Cahlin v Gen'l Motors Acceptance Corp., 936 F.2d 1151, 1160, n.23 (11th Cir. 1991)).

inaccurate. Last, even though a credit reporting agency has a duty to make a reasonable effort to report "accurate" information on a consumer's credit history, it has no duty to report only that information which is "favorable or beneficial to the consumer." Cahlin, 936 F.2d at 1157 (credit report containing derogatory information about account which was charged off by creditor for accounting purposes and which was later settled by consumer for amount less than full balance due was "accurate," within meaning of provision of FCRA);[6] Todd v. Associated Credit Bureau Services, Inc., 451 F.Supp. 447, 449 (E.D.Pa.1977) (failure to report that plaintiffs had paid off debt which creditor charged off as bad debt was not inaccuracy), aff'd., 578 F.2d 1376 (3d Cir.1978), cert. denied, 439 U.S. 1068, (1979) (cited in Koropoulos et al v. The Credit Bureau, 734 F.2d 37, 40 (D.C. 1984)); see also Dickens v. Trans Union Corp., No. 00-5605, 2001 WL 1006259 (6th Cir. Tenn.) (Consumer credit reporting agency accurately reported account as "Charged Off as Bad Debt," and thus did not violate Fair Credit Reporting Act (FCRA), even though guarantor did not himself file for bankruptcy and loan was later paid in full).

In sum, Defendant CDSW is entitled to summary judgment on Plaintiff's FCRA claim because Plaintiff has not presented any disputes of material fact on the question of whether CDSW's credit reports regarding her Furniture Warehouse accounts were inaccurate.

**THEREFORE**,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Merchant's Information Solutions, Inc., d/b/a Credit Data Southwest ("CDSW") **(Doc. 83)** is hereby

---

[6] Cahlin notes that "Congress enacted FCRA with the goals of ensuring that such agencies imposed procedures that were not only "fair and equitable to the consumer," but that also met the "needs of commerce" for accurate credit reporting. 936 F.2d at 1157.

6

GRANTED as set forth in the above findings.[7]

                                                   */s/*_____
                                                   UNITED STATES DISTRICT JUDGE

---

[7] This memorandum opinion does not address Plaintiff's allegations that CDSW violated the New Mexico Credit Bureaus Act, N.M.Stat. Ann. § 56-3-2 (1978), Complaint, ¶ 46, since Defendant's brief did not raise the issue.